FAIRVIEW MACHINE & TOOL CO., INC., Plaintiff,

v.

OAKBROOK INTERNATIONAL, INC. and Nuway Paper, L.L.C., Defendants.

No. Civ.A. 99–30045–MAP.

United States District Court, D. Massachusetts.

Dec. 20, 1999.

Robert L. Leonard, James J. Bregianes, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Plaintiff.

Katherine A. Robertson, Kevin C. Maynard, Bulkley, Richardson & Gelinas, Springfield, MA, for Oak Brook Intern. Inc.

Ronald C. Spradley, Spradley & Riesmeyer, Kansas City, MO, for Nuway Paper, LLC.

## MEMORANDUM REGARDING DEFENDANT NUWAY PAPER L.L.C.'S MOTION FOR RECONSIDERATION OF ORDER FOR PRELIMINARY INJUNCTION

PONSOR, District Judge.

### I. INTRODUCTION

Before this court is defendant Nuway Paper L.L.C.'s ("Nuway") motion for reconsideration of an August 6, 1999 order for preliminary injunction ("Order"). The Order enjoins Nuway from transferring, disposing of, or reducing the value of its corporate assets unless sufficient monies are escrowed to cover a potential judgment in this case. Defendant argues that this court must vacate the Order in light of the Supreme Court's recent decision in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999). Alternatively, if the Order is not vacated, Nuway requests issuance of an order requiring the plaintiff to post a $100,000 bond pursuant to FED.R.CIV.P. 65(c). For the reasons stated below, this court will deny Nuway's motion for reconsideration and allow its motion to post a bond, though in a lesser amount.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following is a summary of the underlying facts of the litigation; for a more detailed account, see *Fairview Mach. & Tool, Co., Inc. v. Oakbrook International, Inc. & Nuway Paper, L.L.C.*, 56 F.Supp.2d 134, 136–137 (D.Mass.1999).

Plaintiff Fairview Machine and Tool Company ("Fairview") is a Massachusetts corporation with approximately fifty employees that produces complex machinery used in the manufacture of paper products. Defendant Nuway is a Delaware company with its headquarters in Chicago, Illinois; as a startup company Nuway built a paper manufacturing plant in Benton Harbor, Michigan in 1996 and 1997. Defendant Oakbrook is an Illinois corporation; it acted as the purchasing agent for Nuway in negotiating for, and ordering, equipment and services from Fairview. Fairview, through Oakbrook, built and sold papermaking machinery to Nuway. Oakbrook and Nuway monitored Fairview's assembly of this machinery, inspected and approved it after completion, and then took possession of the machinery in Chicopee, Massachusetts before shipping it to Michigan for inclusion in Nuway's manufacturing line.

On February 5, 1999 Fairview filed a five-count complaint in Hampden County Superior Court alleging breach of contract, *quantum meruit*, promissory estoppel, misrepresentation, and unfair trade practices. The allegations arose out of the defendants' refusal to pay the alleged outstanding balance of approximately $692,-000.000 for the machinery. Defendants removed the case to federal court in March 1999, where they sought unsuccessfully to have the case dismissed or transferred to the Western District of Michigan. *See Fairview*, 56 F.Supp.2d at 136 (holding that court had personal jurisdiction over defendants, and that transfer was not warranted).[1]

Following arguments on defendants' motion to dismiss, plaintiff learned from information submitted by defendants that most of Nuway's assets at the Benton Harbor, Michigan plant would be sold to a large paper-making conglomerate, Bowater, Incorporated. Concerned that the sale would leave defendant with no assets to pay a potential judgment, plaintiff moved on July 16, 1999 for a preliminary injunction to prevent defendant Nuway from selling its assets other than in the ordinary course of business, or to require Nuway to place in escrow the amount of $630,000 to cover the remaining balance on the price it had agreed to pay for the machinery. On August 6, 1999, this court granted plaintiff's motion for preliminary injunction. Order for Preliminary Injunction, Docket No. 48. As noted, the injunction prohibited defendant from disposing of any assets except in the ordinary course of business until it placed $630,000 in escrow to secure a potential judgment.

In the memoranda submitted for and against this injunction neither side cited or discussed the Supreme Court's *Grupo* decision, which had come down only a few weeks before. There, the Court held that a district court did not have the authority to issue a preliminary injunction preventing a defendant from transferring assets in which no lien or equitable interest was claimed. *See Grupo*, 119 S.Ct. at 1964, 1975. Defendant Nuway has now moved for reconsideration of the August 6, 1999 Order in light of *Grupo*. Plaintiff, on the other hand, requests this court to modify the Order, to take into account the fact that Nuway completed the sale of its assets and is no longer pursuing an ordinary course of business. The modified injunction would require Nuway to place up to $630,000 in escrow to provide for prejudgment security.

## III. DISCUSSION

■ Defendant Nuway argues that the court's Order, issued pursuant to FED.

---

1. Recently, however, defendants have applied to the Judicial Panel on Multidistrict Litigation seeking an order transferring this action to the Western District of Michigan for coordinated or consolidated pretrial proceedings. No order has issued as yet.

R.Civ.P. 65, constitutes a blanket pre-judgement freeze on Nuway's assets of the sort forbidden in *Grupo*.[2]

*Grupo*'s holding, however, is limited to cases where a creditor plaintiff has no lien *or equitable interest* in defendants assets. In *Grupo* an association of investors, Alliance Bond Fund, Inc., purchased notes issued by Grupo Mexicano ("Grupo"), a Mexican holding company involved in toll road construction. Grupo fell into financial trouble and was unable to make an interest payment. After negotiations failed to restructure the debt, Alliance accelerated the notes' principal amount and filed suit in federal district court for the amount due. Alleging that Grupo was at risk of insolvency, or already insolvent, and that it was planning to give Mexican creditors priority, Alliance sought a preliminary injunction, pursuant to FED. R.Civ.P. 65, essentially freezing Grupo's assets so that it could pay any future judgment obtained by Alliance. The district court granted the injunction and the Second Circuit Court of Appeals affirmed.

In reversing, the Supreme Court framed the question as follows: "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Grupo*, 119 S.Ct. at 1964. The Court held that the District Court did not have the power "because such a remedy was historically unavailable from a court of equity." *Id.* at 1975. Specifically, the Court held that federal judges have the equity jurisdiction that was exercised by the English Court of Chancery "at the time of the adoption of the Constitution and the enactment of the original Judiciary Act," *id.* at 1968, and that this jurisdiction did not then, and does not now, include an equita-ble power to assist a general creditor by restricting a debtor's use of his unencumbered property before judgment. *Id.* at 1968–70.

"[W]e ... follow the well-established general rule," the Court noted, "that a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." *Id.* at 1969. "The requirement that the creditor obtain a prior judgment is a fundamental protection in debtor-creditor law." *Id.* at 1973. Since this type of equitable relief—restricting a debtor's use of his unencumbered property before judgment—was a power historically unavailable in a court of equity, the Court held that the District Court did not have the power to issue a preliminary injunction preventing the debtor (Grupo) from disposing of any assets in which no lien or equitable interest was claimed. *Id.* at 1975.

Circuit Courts of Appeal have consistently noted that *Grupo* is limited to cases where a plaintiff has no lien or equitable interest in defendant's assets. For example, the Second Circuit observed that *Grupo* held that "district courts do not have the power to enjoin debtors from transferring assets in which no lien *or equitable interest* is claimed." *III Finance Ltd. v. The Aegis Consumer Funding Group, Inc.,* CIV.A. No. 99–2579(DC), 1999 WL 461808 at *4 n. 1 (S.D.N.Y. July 2, 1999) (emphasis added). The Seventh Circuit held that *Grupo* was controlling in "an action for money damages to prevent the defendant from transferring assets in which no lien *or equitable interest* is claimed." *Steadfast Insurance Co. v. Auto Marketing Network, Inc.,* CIV.A. No. 99–1231, 1999 WL 623851 at *1 (7th Cir. August 13, 1999).

---

**2.** In response, plaintiff argues, *inter alia,* that the court should "repredicate" the basis for the injunction upon FED.R.Civ.P. 64, which allows all remedies provided under state law for seizure of property to satisfy a judgment. Plaintiff's Opposition to Defendants' Motion for Reconsideration, Docket No. 57 at 9. It is not necessary to take up this argument, since for the reasons set forth below, FED.R.Civ.P. 65 provides a proper basis for continuance of the injunction.

Most significant, however, is the recent Fourth Circuit Court of appeals holding that when "both money damages *and equitable relief* are sought . . ., the controlling authority is not *Grupo* but *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940)." *United States ex rel. Rahman v. Oncology Associates P.C.*, 198 F.3d 489, 492 (4th Cir.1999) (emphasis added). The Fourth Circuit found that *Grupo*'s "holding is carefully circumscribed, providing specifically that the general equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions *solely at law.*" *Rahman*, 198 F.3d at 496. (emphasis added). In *Rahman*, the court upheld a district court's pre-judgment, asset-freezing injunction issued against defendants who had allegedly defrauded Medicare and CHAMPUS[3] programs. In its complaint, the government sought both money damages and equitable relief, based in part on a state law cause of action for unjust enrichment. The district court denied defendant's motion to dissolve the injunction in the light of *Grupo* and the Court of Appeals affirmed, noting that "[*Grupo* ] was not presented with, nor did it choose to address, a situation in which equitable remedies were claimed." *Rahman*, at, 496. When equitable remedies are demanded, the court held that asset freezing preliminary injunctions remain available if the injunction "is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." *Id.* at, 497.

The Fourth Circuit's holding is grounded in *Grupo* 's own determination that the cases of *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940), and *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945)—both decided after the merger of law and equity— are "entirely consistent" with the view that

the preliminary injunction in *Grupo* was beyond the district court's equitable power. *Grupo*, 119 S.Ct. at 1971–72. *See Rahman*, at, 495–96.

In *Deckert*, the plaintiffs brought suit under the Securities Act of 1933 alleging fraudulent misrepresentation and concealment in the sale of securities; they requested recission and restitution. *See Deckert*, 311 U.S. at 289, 61 S.Ct. 229. The Supreme Court affirmed the district court's power to enter a preliminary injunction freezing defendants' assets, noting that the "principal objects" of the suit were rescission and restitution. *Id.* at 289, 61 S.Ct. 229. According to *Grupo*, the preliminary injunction allowed in *Deckert* "was a reasonable measure to preserve the status quo pending final determination of the questions raised by [a suit in equity]." *Grupo*, 119 S.Ct. at 1971. Moreover, *Grupo* held, "*Deckert* is not on point here because, as the [*Deckert* ] Court took pains to explain, 'the bill state[d] a cause [of action] for equitable relief.' " *Grupo*, 119 S.Ct. at 1971 (citing *Deckert*, 311 U.S. at 288, 61 S.Ct. 229). "The preliminary relief available *in a suit seeking equitable relief* has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt." *Grupo* 119 S.Ct. at 1971. (emphasis added).

The Fourth Circuit also found that "[t]he principles of *Deckert* were recognized in *De Beers*," the other significant post-merger case. *Rahman*, at, 495–96. In *De Beers*, the United States brought suit against several corporations seeking equitable relief for alleged anti-trust violations. The government sought a preliminary injunction to prevent defendants from removing their assets from the country pending adjudication on the merits. The *De Beers*' Court concluded that the District Court did not have the power to issue

---

**3.** The Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) (now called the TRICARE program) provides federal health benefits to eligible dependants of members of the uniformed services. *Oncology*, 198 F.3d 489, 492 n. 1.

the requested preliminary relief, because the requested injunction in that case dealt "with a matter lying wholly outside the issues in the suit." *Id.* at 220, 65 S.Ct. 1130. Importantly, *De Beers* confirmed that a "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." *Id.* at 220, 65 S.Ct. 1130.

■ From these precedents (*Deckert, De Beers,* and *Grupo*), the Fourth Circuit Court of Appeals delineated several principles to guide trial courts in determining the proper conditions for issuance of a preliminary injunction in these circumstances.

> First, where a plaintiff creditor has no lien or equitable interest in the assets of a defendant debtor, the creditor may not interfere with the debtor's use of his property before obtaining judgment. A debt claim leads only to a money judgment and does not in its own right constitute an interest in specific property. Accordingly, a debt claim does not, before reduction to judgment, authorize prejudgment execution against the debtor's assets.
>
> On the other hand, when the plaintiff creditor asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets, a court may in the interim invoke equity to preserve the status quo pending judgment ... [.] This nexus between the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit is essential to the authority of a district court in equity to enter a preliminary injunction freezing assets.[4]

*Rahman,* at, 496.

Applying these principles to Nuway's motion for reconsideration, this court should ask two questions. First, do the claims in the suit seek cognizable relief in equity against specific assets of the defendant? In other words, is there a sufficient nexus between a cognizable claim in equity and the assets of the defendant that are the target of the preliminary injunction? *See id.* at, 497. Second, would a preliminary injunction freezing these assets be a "reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed?" *Id.* Since the answer to both questions is in the affirmative, the court's issuance of the preliminary injunction was proper and the defendants' motion for reconsideration must be denied.

■ It is important preliminarily to note that the plaintiff's complaint in this case includes a count for *quantum meruit.*

> *Quantum meruit* is a theory of *recovery,* not a cause of action. It is a claim independent of an assertion for damages under the contract, although both claims have as a common basis the contract itself. Recovery under this theory is derived from the principles of equity and fairness and is allowed where there is substantial performance but not full completion of the contract.

*J.A. Sullivan Corp. v. Commonwealth,* 397 Mass. 789, 793, 494 N.E.2d 374 (1986). *See also* BLACK'S LAW DICTIONARY 1255 (7th ed. 1999) (*Quantum meruit* "is an equitable remedy to provide restitution for unjust enrichment"). Typically, *quantum meruit* damages are awarded in quasi-contract (or constructive contract) cases where there has been "unjust enrichment of one party and unjust detriment to the other party." *Salamon v. Terra,* 394 Mass. 857, 859, 477 N.E.2d 1029 (1985). To prevent this unjust enrichment, a court "may allow recovery in *quantum meruit* for the reasonable value of the goods and services conferred by one party upon another." 14 HOWARD J. ALPERIN & LAWRENCE D. SHUBOW, MASSACHUSETTS PRACTICE § 7.4, at 633 (3d ed.1996) (citing cases).

---

4. The court also recognized that "when interim equitable relief is authorized and the public interest is involved, the doctrine applies that '[c]ourts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" *Rahman,* at, 497 (citations omitted).

■ Here, plaintiff Fairview alleges that it provided machinery and services for defendant Nuway's benefit for which plaintiff did not receive full payment. Nuway inspected and accepted the machinery and has now allegedly sold the machinery and other goods to a third party. The plaintiff seeks to recover, from specific assets of the defendant, the full agreed price of the machinery it provided. The plaintiff has an *equitable* interest in defendant's assets, since it seeks restitution for unjust enrichment. Thus, the plaintiff's claim for *quantum meruit* seeks cognizable relief in equity involving the specific assets of the defendant: *i.e.*, funds in the possession of the defendant to pay for the machinery it previously accepted.

Moreover, the preliminary injunction freezing defendant's assets would be a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed. The current injunction prohibits "the defendant from selling assets of any sort other than in the ordinary course of business for good and valuable consideration." Memorandum Regarding Plaintiff's Motion for Preliminary Injunction, Docket No. 46 at 2. In granting the injunction, this court considered the defendants' submissions indicating that Nuway had as of August 6, 1999 "disposed of the vast majority of its assets and has paid the cash it received for these assets to third parties." *Id.* "Under these circumstances," this court concluded, "the plaintiff has proved a substantial likelihood that defendant will be unable to pay any ultimate judgment." *Id.* The obvious purpose of the injunction is to aid this court in giving relief sought, including equitable relief. This court is authorized by FED.R.CIV.P. 65 to issue the injunction because the plaintiff has an equitable interest in Nuway's assets, and the injunction is a reasonable measure to secure those assets in aid of the equitable relief claimed.

Before moving on to the question of whether the plaintiff must post bond, the court will consider plaintiff's request to modify the injunction in light of Nuway's completed sale of most of its assets and its termination as an ongoing operation. The modified injunction would require Nuway to deposit $630,000 into an escrow account, and enjoin Nuway from reducing its assets until the account is fully funded. Since this modification identifies specifically the defendant's assets sought for equitable relief, and recognizes the change in defendant's status, the court will grant the modification. *See Rahman*, at, 496.

The final issue is whether the court should require the plaintiff to post a bond in the amount of $100,000 pursuant to FED. R.CIV.P. 65(c), as defendant requests. Defendant argues that Rule 65(c) is clear on its face: "No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper." FED. R.CIV.P. 65(c).

■ Plaintiff argues that there is good cause not to require a bond. Fairview is a small company that has operated continuously for several decades in Chicopee, Massachusetts. In contrast to Nuway, there is no reason to doubt that Fairview will have assets to answer for any damage claimed from a wrongful injunction. Moreover, given that Nuway is no longer an operating business, and will suffer no operational losses as a result of the court action, a $100,000 would not be reasonable. The only harm that Nuway may suffer would be interest lost on the $693,000 placed in escrow, and even this may be palliated by placing monies in an interest-bearing account.

Rule 65(c) requires a bond but "in such a sum as the court deems proper." Moreover, "there is ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond." *International Assoc. of Machinists and Aerospace Workers, et al. v. Eastern Airlines, Inc.*, 925 F.2d 6, 9 (1st Cir.1991). Considering all these factors, the court will order a bond in the amount of $10,000.

## IV. CONCLUSION

In sum, *Grupo* is not controlling here because the plaintiff has an equitable interest in defendant's assets, and the injunction is a reasonable measure for preserving the status quo in aid of the ultimate equitable relief claimed. Thus, the defendant's motion to vacate is DENIED, and the plaintiff's request to modify the injunction is ALLOWED. The new injunction issued this day will replace this previous injunction and will take effect forthwith. Plaintiff will post a bond in the amount of $10,000 within fourteen days of this Order.

A separate order will issue.

## ORDER

For the reasons stated in the accompanying Memorandum, defendants' Motion for Reconsideration is hereby DENIED. Plaintiff's Motion to Modify is ALLOWED. Plaintiff will post a bond of $10,000 within fourteen days.