**MICRO NETWORKS CORP., Plaintiff**

v.

**HIG HIGHTEC, INC., Defendant.**

**No. CIV.A. 01–40206–NMG.**

United States District Court,
D. Massachusetts.

Jan. 11, 2002.

Mark E. Tully, Goodwin Procter LLP, Gus P. Coldebella, Goodwin Procter LLP, Boston, MA, for Micro Networks Corporation, Plaintiff.

Richard M. Gilbert, Goldstein & Manello, P.C., Todd Michael McGrath, Schnader, Harrison, Goldstein & Manello, Boston, MA, for HIG Hightec, Incorporated, Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

On December 21, 2001, Plaintiff Micro Networks Corporation ("Micro Networks") filed an emergency motion for a preliminary injunction requiring HIG Hightec, Inc. ("Hightec") to place in escrow any amount over and above its total investment in Micro Networks that Hightec receives as a result of the acquisition of Micro Networks by Integrated Circuit Systems, Inc. ("ICS"). Oral argument on the motion was heard on January 9, 2002.

The case is before this Court on diversity grounds. Micro Networks is a Delaware corporation with its principal place of business in Worcester, Massachusetts. Hightec is a Grand Cayman Islands corporation with its principal place of business in Miami, Florida.

## I. *Factual Background*

### A. Negotiations Period

Micro Networks is a leading supplier of microelectronic frequency sources and sig-

nal processing components and subsystems used by Original Equipment Manufacturers ("OEMS") in telecommunications, data and military markets. Hightec is an investment holding company focused on venture capital investments and management buy-outs.

In the Fall of 1997, Micro Networks and Hightec began negotiating a Securities Purchase Agreement ("SPA") to enable Hightec to purchase a substantial block of Micro Networks' preferred stock. Section 7.3 of the Stock Terms, an attachment to the SPA, was a contentious contractual provision for both parties. After extensive negotiation, Micro Networks sent and Hightec signed on December 8, 1997 the final version of the SPA, which provided in Section 7.3 of the Stock Terms that Micro Networks could not enter into certain transactions, including mergers, "without the prior consent of *the holder of not less than 70% of the outstanding shares of Preferred Stock.*" Although it has not presented to this Court any tangible evidence thereof, Hightec contends that 1) the version of the SPA it signed did not include an attachment describing its consent rights with respect to major corporate events and 2) the agreement it negotiated with Micro Networks gave Hightec, itself, veto rights over major corporate events.

On December 22, 1997, Micro Networks filed the Restated Certificate in Delaware ("Restated Certificate") that incorporated the version of Section 7.3 conferring upon the holders of 70% of the preferred stock a consent right over major corporate events. At no time has Hightec held as much as 70% of all the preferred stock of Micro Networks.

### B. Merger Period

In 2001, Micro Networks hired Bank of America Securities ("BAS") to explore strategic transactions. After several months of considering potential strategic partners, Micro Networks entered into a non-binding letter of intent with ICS on October 12, 2001. Shortly thereafter, Micro Networks' Board of Directors approved the merger agreement. On November 2, 2001, Micro Networks received from Hightec's counsel a letter stating that Hightec would seek to enjoin the acquisition if the deal proceeded without obtaining Hightec's consent.

In response, on November 5, 2001, Micro Networks filed 1) an ex parte motion for impoundment and confidentiality order and 2) a Verified Complaint for emergency declaratory and injunctive relief against Hightec. This Court held a hearing on November 8, 2001 after which it impounded the plaintiff's complaint and entered an expedited scheduling order.

On December 18, 2001, this Court issued an Order ("the Order") that 1) denied Hightec's motion to dismiss for lack of personal jurisdiction and 2) allowed Micro Networks' motion for summary judgment on Count I of the Amended Verified Complaint whereby it declared that the version of Section 7.3 in the Restated Certificate governed Hightec's consent rights. Following that Order, ICS consummated the transaction with Micro Networks. Hightec's share of the total consideration paid by ICS, less funds the parties agreed to place in escrow pending certain claims, was $8.5 million. Hightec's total investment in Micro Networks was $2.5 million.

## II. *Discussion*

### A. Legal Standard

Pursuant to Fed.R.Civ.P. 65, a district court exercises broad discretionary power to grant or deny preliminary injunctions. In ruling on a motion for a preliminary injunction, this Court must consider whether Micro Networks has established

that: 1) it has a substantial likelihood of success on the merits, 2) there exists, absent injunctive relief, a significant risk of irreparable harm to Micro Networks, 3) the balance of hardship tilts in its favor, and 4) granting the injunction will not negatively affect the public interest. *See e.g. Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996); *TEC Engineering Corp. v. Budget Molders Supply Inc.,* 82 F.3d 542, 544 (1st Cir. 1996).

In the instant case, Micro Networks seeks an equitable order requiring Hightec to escrow approximately $6 million from its share of the proceeds from the ICS acquisition. Micro Networks argues that injunctive relief is necessary in the event that the Appeals Court overturns this Court's determination that Hightec's consent rights are governed by the version of Section 7.3 incorporated into the Restated Certificate. If Hightec were successful in its appeal, Micro Networks contends that in all likelihood the finder of fact would also conclude that the parties did not consummate their agreement in December 1997 because there was no meeting of the minds with respect to Hightec's consent rights, which, as both parties agree, was a cornerstone of their agreement. If there was no agreement, Micro Networks asserts that Hightec was never a stockholder and is entitled to no more than a return of its investment, plus interest, from the proceeds of the ICS acquisition.

Hightec is a venture capital firm and its animating purpose is to purchase and hold stock in Micro Networks in order to generate a favorable rate of return on investment for its numerous investors. In broad outline, Hightec is merely an investment vehicle for holding Micro Networks stock. Once the ICS acquisition of Micro Networks is complete, Hightec will distribute the proceeds from the transaction to its various investors who had a stake in Micro Networks after which Micro Networks will (it fears) be unable without "extraordinary effort" to recover any funds improperly distributed.

## B. Likelihood of Success on the Merits

In assessing the merits of the issues presented in a motion for preliminary injunction, courts address "probable outcome[s]". *See, e.g., Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 238 (1st Cir.1986) (en banc), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). Although the likelihood of success prong is "the critical factor in determining the propriety of injunctive relief", it still must be balanced against the other prongs. *Lancor v. Lebanon Housing Authority,* 760 F.2d 361, 362 (1st Cir.1985); *Cohen v. Brown Univ.,* 991 F.2d 888 (1st Cir.1993).

At this stage of the litigation, Micro Networks has *not* clearly demonstrated a likelihood of success on the merits of its claims. Broadly stated, it asserts that if Hightec were to challenge successfully this Court's Order, Micro Networks, in turn, would be likely to persuade the finder of fact that no agreement was consummated because there was no meeting of the minds and thus Hightec was never a Micro Networks stockholder.

Micro Networks' arguments are an exercise in mental gymnastics, placing emphasis upon *possible rather than probable* outcomes. Despite Micro Networks' assertion to the contrary, even if the Appeals Court were to overturn the Order, it does not necessarily follow that there was no contract between the parties. For example, the Court of Appeals could determine that, notwithstanding the absence of a meeting of the minds at the outset, the conduct of the parties over the past four years evidences a binding agreement.

Clearly, Micro Networks has not demonstrated a likelihood of success sufficient to support injunctive relief.

█ After acting upon plaintiff's request for an expedited declaration that the version of Section 7.3 incorporated into the Restated Certificate governs Higtec's consent rights, this Court is underwhelmed by plaintiff's new motion for an injunction based on the likelihood of success of a legal theory that is incongruous and incompatible with its earlier, successful argument and the gravamen of its complaint.[1]

## C. Irreparable Harm

█ As a general rule, the possibility of monetary injury does not constitute irreparable harm. A plaintiff nevertheless can establish irreparable injury by showing that without equitable relief there is a substantial probability "that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir.1999)(internal citations omitted). Micro Networks must demonstrate the likelihood of irreparable harm; speculative injury is not a sufficient justification for injunctive relief. *See* 11A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2948.1 (2001).

The First Circuit Court of Appeals has recognized the propriety of a preliminary injunction where the relevant funds or assets in which the party has an equitable interest are in danger of depletion and dissipation. *See e.g., Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 52 (1st Cir.

1986). Although the majority of cases principally concern defendants on the brink of insolvency, courts' primary effort is to preserve a damages remedy and to "freeze the status quo pending [a] final determination..." *Id.* at 53 (quoting *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290, 61 S.Ct. 229, 85 L.Ed. 189 (1940)); *Fairview Machine & Tool Co., Inc. v. Oakbrook Int'l Inc.*, 77 F.Supp.2d 199, 205 (D.Mass.1999).

Other Circuits have recognized the propriety of entering a preliminary injunction in cases where assets necessary to satisfy a future judgment were about to be placed beyond the reach of the judicial system, *see USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir.1982); *International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir.1974), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974), or were about to be disbursed. *See Lynch Corp. v. Omaha National Bank*, 666 F.2d 1208 (8th Cir.1981).

█ The nettlesome issue of the availability of monetary recovery from Hightec itself or from its investors was not sharply focused upon by the parties in their pleadings or at oral argument. Micro Networks, as the moving party, must demonstrate to this Court that it will unable to recover its funds once they are disbursed to Hightec and its investors. Micro Networks' bare averment that Hightech's investors are numerous and that it likely will require extraordinary effort to recover any monies owed is inadequate to support a finding of irreparable harm sufficient to warrant the entry of a preliminary injunction. Micro Networks has offered only speculation.

---

1. The plaintiff's conduct may give rise to a colorable claim of judicial estoppel, although this Court need not decide that claim in ruling on the plaintiff's motion. In broad outline, judicial estoppel prevents a party from "asserting a position in one legal proceeding which is contrary to a position it had already asserted in another." *Patriot Cinemas v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987).

### D. The Balance of Hardships and the Public Interest

In considering the comparative hardships, the plaintiff has demonstrated that it *may* suffer a harm in the future. For its part, Hightec's investors would be harmed without immediate access to the profits from the ICS transaction. The business of a venture capitalist is to reinvest such profits in promising companies. The balance of harms thus does not tip in favor of either party.

Similarly, the public interest prong does little to illuminate the propriety of injunctive relief. The public interest is neither harmed nor helped by alternative rulings in this case. *See USACO Coal Co.*, 689 F.2d at 99–100; *Fleet Nat'l Bank v. Rapid Processing Co.*, 643 F.Supp. 1065, 1066 (D.Mass.1986).

### III. *Conclusion*

The issuance of injunctive relief, particularly one requiring the defendant to place funds in escrow, is warranted only when the moving party has, as an initial matter, demonstrated its likelihood of success and irreparable injury in the absence of such relief. The plaintiff here has demonstrated neither a likelihood of success nor irreparable injury. Accordingly, its motion will be denied.

### ORDER

For the reasons stated in the Memorandum above, Micro Networks Motion for a Preliminary Injunction (Docket No. 35) is **DENIED**.

**So ordered.**