# United States Court of Appeals
## For the First Circuit

Nos. 09-1038, 09-1953, 09-2184

JOSEPH IANTOSCA, Individually and as Trustee of the Faxon Heights
Apartments Realty Trust and Fern Realty Trust; BELRIDGE
CORPORATION; GAIL A. CAHALY; JEFFREY M. JOHNSTON; BELLEMORE
ASSOCIATES, LLC; MASSACHUSETTS LUMBER COMPANY, INC.,

Plaintiffs, Appellees,

v.

STEP PLAN SERVICES, INC.; BENISTAR 419 PLAN SERVICES, INC.,

Defendants, Appellants.

_____

BENISTAR ADMIN SERVICES, INC.; DANIEL CARPENTER; MOLLY CARPENTER;
BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC; BENISTAR LTD.;
BENISTAR EMPLOYER SERVICES TRUST CORPORATION; CARPENTER FINANCIAL
GROUP, LLC; BENISTAR INSURANCE GROUP, INC.; TRAVELERS INDEMNITY
COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S LONDON; TRAVELERS
PROPERTY CASUALTY COMPANY OF AMERICA,

Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,[*] Associate Justice,
and Howard, Circuit Judge.

_____

[*]The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

John B. Farley with whom James V. Somers, Renee M. Reed, Halloran & Sage LLP, Jack E. Robinson, Ira B. Silverstein and Thorp Reed & Armstrong LLP were on brief for appellants.

Anthony R. Zelle with whom Thomas W. Evans, Zelle McDonough & Cohen, John E. O'Brien, Jr., Bradford S. Babbitt, Robinson & Cole LLP, William C. Nystrom, Colleen C. Cook and Nystrom Beckman & Paris were on brief for appellees.

May 3, 2010

**BOUDIN**, <u>Circuit Judge</u>.    This is an appeal from a preliminary injunction (and related orders) granted to the district-court plaintiffs in their reach-and-apply action.    The effect is to freeze <u>pendente lite</u> certain funds, now in the hands of third parties (the reach-and-apply defendants), due to one or more of the other defendants who owe, or are alleged to owe, money judgments to the plaintiffs.    The background is complicated and involves proceedings in several different courts.  We begin with a summary.

Benistar Property Exchange Trust Company, Inc. is a Delaware corporation that held itself out as an escrow agent for persons seeking to perform tax-deferred, "like-kind" property exchanges pursuant to 26 U.S.C. § 1031 (2006).  These transactions achieved tax benefits but required that certain funds be held in escrow for a period; Benistar Property fulfilled this escrow role. The plaintiffs (now appellees in this court), whom we will call "the creditors," are former Benistar Property clients.

In 2001, the creditors filed suit in Massachusetts state court alleging that Benistar Property; Martin Paley, its president; Daniel Carpenter, its chairman and sole shareholder; and several others had breached contractual and fiduciary duties by losing escrowed funds in high-risk options trading rather than holding the

funds in safer, liquid accounts as promised.[1]  After a trial, the defendants in that case were found liable, and enhanced damages and attorneys' fees were awarded under Mass. Gen. Laws. ch. 93A (2009). See Cahaly v. Benistar Prop. Exch. Trust Co., Inc., 885 N.E.2d 800 (Mass.), cert. denied, 129 S. Ct. 637 (2008).  The final award--which we refer to as "the Cahaly judgement"--was for approximately $20 million, of which only a portion has been paid.

In September 2003, the Massachusetts state court pierced the corporate veil and extended liability to five additional corporate entities controlled by Carpenter: Benistar Admin Services, Benistar Employer Services Trust Corp., Benistar Ltd., Carpenter Financial Group, LLC, and U.S. Property Exchange.  In so doing, the court found that Carpenter owned each of the entities either by himself or with his wife, Molly; that Carpenter exercised control over all entities; that assets were intermingled; and that the entities were under-capitalized and failed to observe corporate formalities.

A second law suit now enters the picture frame.  In April 2006, a suit--"the Koresko litigation"--was brought against John Koresko and several entities owned by him by (1) two companies engaged as sponsors of multiple-employer welfare benefit plans,

---

[1]A criminal case was also brought against Daniel Carpenter; he was convicted on multiple counts of wire and mail fraud but was granted a new trial due to prosecutorial misconduct. United States v. Carpenter, 494 F.3d 13, 15-16 (1st Cir. 2007).

STEP Plan Services, Inc. and Benistar 419 Plan Services, and their common president, Wayne Bursey, and (2) two other Benistar entities, one of which--Benistar Admin Services--was a party in the earlier Cahaly litigation, and one of which--Benistar Insurance Group, Inc.--was not. The outcome was a settlement from Koresko's insurers (Travelers Insurance Company and Certain Underwriters at Lloyds, London) in the amount of roughly $4.5 million.[2]

In late 2008, the creditors, holding their unsatisfied Cahaly judgment, brought suit in Massachusetts state court to reach and apply money that the two insurance companies had agreed to pay on behalf of the Koresko entities to settle the litigation against them. The state court granted a temporary restraining order at the creditors' request enjoining the distribution of any settlement proceeds by either of the reach-and-apply defendants.[3] This reach-and-apply case, the third law suit which is now before us, was thereafter removed to federal district court.

---

[2]There is some question as to whether a settlement agreement was ever formally consummated. The Benistar entities claim in their brief that decisions by the state and federal courts to enjoin distribution of settlement proceeds "derail[ed] the settlement agreement," but nothing in the record verifies that assertion.

[3]The TRO stated that "Travelers Insurance Company and Underwriters at Lloyds, London be and hereby are enjoined and otherwise restrained from selling, conveying, transferring, assigning, hypothecating, depleting or otherwise disposing of or diminishing any property, right, title or interest . . . of the above-referenced defendants in settlement proceeds from a Pennsylvania Lawsuit: Step Plan Service, Inc. et al. v. Koresko Associates."

In the district court, the reach-and-apply defendants were the insurance companies; the other defendants were the plaintiffs in the Koresko litigation (other than Bursey) and the judgment debtors in the Cahaly litigation. After removal, the defendants (other than the insurance companies) filed motions to dismiss or transfer venue. Rather than granting the motion, the district court temporarily extended the state court's TRO, thereafter held a hearing on the creditors' request for a preliminary injunction, and, on November 21, 2008, granted a preliminary injunction tracking the restraining order.

In granting the injunction--which required a $400,000 bond from the creditors--the court found that "Step is likely abusing the corporate form," and a "substantial risk that, unless enjoined, the [Benistar] defendants will dissipate or conceal the assets" gained from the Koresko litigation settlement. The court also ordered the creditors to seek clarification from the state court in the Cahaly case to confirm that the Cahaly judgment did not preclude enforcing the judgment against new alter egos of the original defendants.[4]

The litigation before the district court has proliferated. The creditors have sought to establish alter ego

---

[4]The creditors were required by the injunction to periodically update the court as to the status of their motion for clarification. As of creditors' the most recent update, filed January 22, 2010, the state-court motion was still pending.

status for the Koresko plaintiffs who were not already subject to the Cahaly judgment. The insurance companies filed claims of their own in the district court; the Benistar defendants claimed against the creditors and the insurance companies and also asserted numerous defenses and arguments for dismissal. It appears that there are also proceedings in the Koresko case to enforce the settlement. See generally Iantosca v. Benistar Admin Servs., Inc., No. 08-11785-NMG, 2009 WL 2382750, at *1-4 (D. Mass. July 30, 2009).

The district-court case is now in a holding pattern while awaiting clarification by the Massachusetts Superior Court, and the preliminary injunctions' effect is to preserve funds in the hands of the insurance companies pending disposition of the reach-and-apply claims in this case. The preliminary injunction granted by the district court in November 2008 was extended in May 2009, motions to vacate and reconsider were denied, and the present appeal--by STEP Plan and Benistar 419 Plan only--ensued.

A preliminary injunction is appealable but review is deferential as to the weighing of considerations under the familiar four-part test. Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004).[5] Although there are exceptions, usually the

---

[5]The considerations are "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the

injunction requires the movant to show likelihood of success, <u>New Comm Wireless Servs., Inc.</u> v. <u>SprintCom, Inc.</u>, 287 F.3d 1, 9 (1st Cir. 2002), and two of the arguments offered by STEP Plan and Benistar 419 Plan contest the district court's finding of such a likelihood.

The first of these arguments is that the creditors should have been precluded from bringing veil-piercing claims against the two appellants (to make them liable under the <u>Cahaly</u> judgment), because the judgment itself dismissed--with prejudice, appellants say--all claims against "Jane Doe Affiliates and Subsidiaries" of the Benistar defendants. The relevant portion of the judgment reads as follows:

> 8. The Claims of All Plaintiffs Against the Defendants Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter:
>
> That judgment enter against all the plaintiffs and in favor of the defendants Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter on all the plaintiffs' claims against these defendants, and that all such claims be dismissed.

Given their ties to other Benistar entities, the appellants argue that they qualify as "Jane Does" under the judgment; that the "all such claims be dismissed" language applies to them and resolves

---

court's ruling on the public interest." <u>Bl(a)ck Tea Soc'y</u>, 378 F.3d at 11 (quoting <u>Charlesbank Equity Fund II</u> v. <u>Blinds To Go, Inc.</u>, 370 F.3d 151, 162 (1st Cir. 2004)).

such claims with prejudice; that the creditors' veil-piercing claims against them are res judicata; and that the creditors are thus unlikely to prevail on the merits of their reach-and-apply action, rendering the preliminary injunction erroneous.

The district court disagreed. While requiring the creditors to seek clarification in the state court (a request that is still pending), it concluded that the Cahaly judgment's language was not intended to "foreclose prospectively plaintiffs' ability to enforce that judgment against an entity later determined to be an alter ego [of Benistar Property]" and accordingly declined to "construe [its] ambiguous language" in that fashion. STEP Plan and Benistar 419 Plan now say that this determination is reversible error.

Res judicata, in its claim preclusion aspect, is intended to prevent the re-litigation of claims already litigated or that should have been litigated in an earlier action; in its issue preclusion aspect, it prevents (with qualifications) re-litigation of issues earlier decided even if the subsequent case involves a different claim. In re Sonus Networks, Inc., 499 F.3d 47, 56 (1st Cir. 2007). In considering the preclusive effect of a Massachusetts judgment, we look to Massachusetts law. Mulrain v. Bd. of Selectmen, 944 F.2d 23, 25 (1st Cir. 1991).

The inclusion of Jane Does in the Cahaly complaint likely reflected an expectation that, through discovery or otherwise,

other participants in the wrongdoing might be identified or other Benistar companies with alter ego status made liable. But neither of the current appellants' liability nor their alter ego status was actually tried in Cahaly and found in the appellants' favor. One of the two appellants had not even been acquired by the Benistar interests until after the Cahaly litigation began. So issue preclusion is out of the picture.

In many courts claim preclusion extends to claims that were not tried in the earlier case but arose out of the same transaction or occurrence, see Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008); McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006), making the doctrine in part a surrogate for compulsory joinder; but it normally applies to claims between the named plaintiff and the named defendant. To extend claim preclusion in favor of new defendants, who were not named or served as parties in the earlier litigation, would be dubious as a matter of policy and is not supported by any case cited by appellants.

True enough, one of the appellants was potentially one of the Jane Does who could have been brought into the case, but that is hardly the same thing. Cf. James v. Mazda Motor Corp., 222 F.3d 1323, 1324 n.6 (11th Cir. 2000) (noting that "John Doe was never in any sense 'before the court.'"). There is economy in requiring that related claims against present defendants be pressed in the initial suit, and various devices exist for that purpose. It is

quite another matter to require automatically--on pain of preclusion--that everyone potentially liable for a wrong be identified and included in the initial law suit.

Even if <u>res judicata</u> protected the appellants, which we doubt, the injunction itself ran only against the insurers, and, to the extent that the creditors had claims against Benistar Admin Services, a plaintiff in the <u>Koresko</u> litigation and also liable on the <u>Cahaly</u> judgment, the injunction served a separate purpose. The appellants say that Benistar 419 was the only payee of the <u>Koresko</u> settlement. But this premise tends rather to reinforce concerns about fraudulent transfers that are also alleged here.[6]

Appellants' second attack on the likelihood of the creditors' success is that the proceeds of the <u>Koresko</u> settlement are assets of an ERISA plan and accordingly "may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (2006). It is unclear that the settlement proceeds are protected plan "benefits" and unclear too (as already noted) whether the proceeds belong only to either plan. The Supreme Court, moreover, has held that ERISA plans "may be sued . . . for run-of-the-mill state-law claims such as unpaid rent,

---

[6]The circumstances of Benistar 419's assignment as the sole payee of the <u>Koresko</u> settlement are troubling: after arguing at the preliminary injunction stage that the proceeds would be payable entirely to STEP Plan, the defendants abruptly changed their stance--in a single footnote and without explanation--and named Benistar 419 Plan as payee. Benistar Admin Services paid for all of STEP Plan's legal bills in the <u>Koresko</u> litigation, yet it would stand to receive nothing for its trouble.

failure to pay creditors, or even torts committed by an ERISA plan." Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 833 (1988).

Appellants' citations in support of their argument are to suits by creditors against the beneficiaries of ERISA plans (e.g., a challenge to the transfer of interests in pension benefits by a nonparticipant spouse, see Boggs v. Boggs, 520 U.S. 833, 846-47 (1997)), not the plans themselves. As the district court pointed out, Benistar's inalienability argument is also in tension with appellants' midstream switch from STEP Plan to Benistar 419 Plan as sole payee of the settlement proceeds. The likelihood-of-success finding by the district court is more than adequately supported.

The appellants next argue that the district court lacked personal jurisdiction over them, lacked subject matter jurisdiction, violated the Anti-Injunction Act, 28 U.S.C. § 2283, and should have abstained pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). On appeal from a preliminary injunction, appellants are free to argue against the injunction based on defenses that might not be appealable now absent the injunction, but these objections all fail.

The district court held that "the question of personal jurisdiction over [STEP Plan and Benistar 419 Plan] overlaps with plaintiffs' substantive veil-piercing claim," and delayed

resolution of the issue until after the appellees had been afforded an opportunity for jurisdictional discovery. Appellants insist that delay is one thing and the grant of a preliminary injunction another, citing United Electric, Radio and Machine Workers v. 163 Pleasant St. Corp., 960 F.2d 1080 (1st Cir. 1992), but that case treated the order of disposition as a matter of convenience rather than a requirement. Id. at 1085.

In all events, the district court made a more than adequate assessment on affidavits that STEP likely is an alter ego of the Cahaly defendants, and this finding is sufficient to support the entry of a preliminary injunction. See Visual Sciences, Inc. v. Integrated Commc'ns Inc., 660 F.2d 56, 59 (2d Cir. 1981).[7] The appellants complain that the creditors have not provided similar affidavits demonstrating that Benistar 419 Plan would also be subject to corporate disregard. As the district court noted, "that omission is understandable given the . . . initial insistence that Step was the only beneficiary of the [Koresko] Settlement."

Further, the preliminary injunction runs only against the insurers, and they have not contested personal jurisdiction. Those

---

[7]The district court found that the appellees had "presented substantial evidence that [STEP Plan] should be subject to the doctrine of corporate disregard," that the court could thus attribute STEP Plan's alter egos' contacts to STEP Plan, and that the court would have jurisdiction over it as a result. A number of cases support this theory. See, e.g., Donatelli v. Nat'l Hockey League, 893 F.2d 459, 468-69 (1st Cir. 1990); Telenor Mobile Commc'ns AS v. Storm LLC, 587 F. Supp. 2d 594, 619 (S.D.N.Y. 2008).

-13-

entitled to the settlement could suffer from delay, but courts do not need personal jurisdiction over every party that might be affected--even only indirectly--by an injunction. See Hendricks v. Bank of America, N.A., 408 F.3d 1127, 1135-36 (9th Cir. 2005). Such entities may, of course, themselves choose to appear. And in this case both appellants have the protection of a generous bond required by the district court.[8]

The appellants' subject matter objection is that the district court lacked authority to hear the case because the reach-and-apply case was not ripe when filed. This is so, they say, because Massachusetts law prevents the execution of a judgment "until the exhaustion of all possible appellate review thereof." Mass. Gen. Laws ch. 235, § 16 (2010). At the time this reach-and-apply suit was filed in October 2008, a petition for certiorari was pending in the U.S. Supreme Court and was not denied until December.

It is unclear whether the possibility of certiorari counts under the cited statute. The Massachusetts Supreme Judicial Court has "said many times[] [that] certiorari does not provide an

---

[8]The appellants argue that they are "necessary" parties to the plaintiffs' request for injunctive relief; the injunction, they say, will "impair or impede [their] ability to protect [their] interest" in the Pennsylvania settlement. Fed. R. Civ. P. 19(1)(B)(i) (2010). Quite apart from the bond, the injunction "merely preserves the asset pending a final judgment on the merits . . . [and] [t]hus, as a practical matter, . . . does not impede [their] ability to protect that asset." Hendricks, 408 F.3d at 1136 (internal quotation marks omitted).

additional or alternative avenue of appellate review." Picciotto v. Super. Ct. Dept. of Trial Ct., 771 N.E.2d 151, 152 (Mass. 2002). Anyhow, certiorari was long ago denied and the concern of the ripeness doctrine--premature adjudication, Rhode Island Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 33 (1st Cir. 1999)--is now irrelevant. No purpose would be served by requiring that same suit be refiled now.

The Anti-Injunction Act, also offered as an objection, forbids a federal court from granting "an injunction to stay proceedings in a State court" except "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (2006). The phrase "proceedings in a State court" includes settlement proceedings, Hill v. Martin, 296 U.S. 393, 403 (1935), but the injunction granted by the district court does not stay proceedings in the Koresko litigation, merely requiring that the insurers retain the funds until third party claims to them are resolved.

Further, because the creditors in this case were not parties in the Koresko litigation or in privity with parties, they are considered "strangers" to that suit and are accordingly unrestricted by the Anti-Injunction Act. See Casa Marie, Inc. v. Super. Ct. of Puerto Rico, 988 F.2d 252, 264 (1st Cir. 1993). The Anti-Injunction Act "does not prohibit third parties from seeking to enjoin a state proceeding with a federal injunction" if the

-15-

third party is "a stranger to the state proceedings." Garcia v. Bauza-Salas, 862 F.2d 905, 909 (1st Cir. 1988); accord Hale v. Bimco Trading, Inc., 306 U.S. 375, 377-78 (1939).

Nor is abstention by the federal court compelled, as appellants now argue, by Colorado River Water Conservation Dist. v. United States, in which the Supreme Court held that deference by federal courts may be appropriate "in situations involving the contemporaneous exercise of concurrent jurisdiction[] . . . by state and federal courts." 424 U.S. at 817. That case dealt with essentially parallel proceedings in state and federal court; nothing of the kind is present here.

Appellants' penultimate argument is that the creditors failed to provide evidence supporting renewal of the injunction after it expired. The district judge had set the preliminary injunction to last six months, noting that it could be extended. The injunction expired, and after a six day hiatus the creditors asked for its continuation, which the district court duly granted relying on earlier evidence. Nothing relevant impaired the district court's original justification which equally supports the extension.

The appellants' final argument is that the injunction exceeds the limits of the district court's equity power pursuant to Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). There, a closely divided Supreme Court held

that a preliminary injunction freezing a defendant's assets was beyond the conventional equity power of the federal courts when the movants were merely alleged general creditors who lacked a judgment lien on or equitable interest in those assets. Id. at 319-20, 333. But, of course, the creditors do have such a judgment against Benistar Admin Services.

Appellants say that no such judgment was entered against them and that the funds owed by the insurers under the Koresko settlement belong only to one of them, Benistar 419 Plan. But the creditors themselves have a colorable claim that appellants' own supposed interest under the settlement rests upon a fraudulent conveyance that a court will not recognize, and that the settlement funds properly belong to one or more of the named defendants who are liable to the creditors under the Cahaly judgment. So the creditors do have a claimed lien interest to support the preliminary injunction.

Grupo Mexicano itself distinguished Deckert v. Independence Shares Corp., 311 U.S. 282 (1940), an earlier decision upholding a preliminary injunction freezing assets, by noting that Deckert involved claims for rescission and restitution. 527 U.S. at 325. In so doing, the Court said that "this case does not involve a claim of fraudulent conveyance," id. at 324 n.7, and, while it declined to say how it would decide such a case, other courts have held that Grupo Mexicano "thus exempts from its

proscription against preliminary injunctions freezing assets cases involving . . . fraudulent conveyances."[9]

Appellants say that the creditors primarily aim to obtain legal relief to collect money damages from them and cite JSC Foreign Economic Association Technostroyexport v. International Development & Trade Services, Inc., 295 F. Supp. 2d 366, 388 (S.D.N.Y. 2003); that case invoked Grupo Mexicano where the fraudulent conveyance claim depended upon first establishing alter ego status. Even assuming we were to agree with JSC, proving alter ego status is not a precondition to showing that, if the fraudulent conveyance is disregarded, the settlement belongs to Cahaly judgment debtors. See note 6, above.

If it were necessary to rule on the point, we would likely agree with decisions concluding that a court may, consistent with Grupo Mexicano, "issue[] asset freezing injunctions in 'mixed' cases . . . where both equitable and legal remedies are sought."[10] As matters stand, it is enough that those funds may belong not to alter egos but to named defendants subject to the Cahaly judgment.

---

[9]In re Focus Media Inc., 387 F.3d 1077, 1085 (9th Cir. 2004); see also Johnson v. Couturier, 572 F.3d 1067, 1083-84 (9th Cir. 2009); Animale Group Inc. v. Sunny's Perfume Inc., 256 F. App'x 707, 709 (5th Cir. 2007); Kennedy Bldg. Assocs. v. CBS Corp., 476 F.3d 530, 535 (8th Cir. 2007).

[10]Nilson v. JPMorgan Chase Bank, N.A., No. 1:09-cv-00121, 2009 WL 5205994, at *25 (D. Utah Dec. 23, 2009); see also Animale Group Inc., 256 F. App'x at 709; Matrix Partners VIII, LLP v. Natural Res. Recovery Inc., No. 1:08-CV-547, 2009 WL 175132, at *4-5 (E.D. Tex. Jan. 23, 2009).

A preliminary injunction freezing the funds <u>pendente lite</u> is thus fully consistent with <u>Grupo Mexicano</u>.

<u>Affirmed</u>.