**Elizabeth TAMPOSI, Plaintiff,**

v.

**Stephanie DENBY, Esq., Burke, Warren, MacKay, & Serritella, P.C., MacKay & Serritella, P.C., Michael Weisman, Esq., Rebecca McIntyre, Esq., Weisman & McIntyre, P.C., Julie Shelton, Esq., Individually and in her capacities as Trustee of the Elizabeth M. Tamposi GST Exempt Trust and the Elizabeth M. Tamposi Trust, both created under the Samuel A. Tamposi, Sr., 1992 Trust, and in her capacity as Trustee of the Elizabeth M. Tamposi Trust, created under the Samuel A. Tamposi, Sr. 1994 Irrevocable Trust, Butler, Rubin, Saltarelli & Boyd, LLP., Baker & Daniels, LLP., Defendants.**

**Civil Action No. 2010–12283–RBC.**

United States District Court,
D. Massachusetts.

Dec. 23, 2013.

---

12. Plaintiffs' complaint incorporates the Taunton Property mortgage document by reference.

Charles P. Kazarian, Christopher S. Malloy, Law Office of Charles P. Kazarian, Boston, MA, for Plaintiff.

David A. Axelrod, Robert A. Cohen, David A. Axelrod & Associates P.C., Chicago, IL, George A. Berman, Sarah–Elizabeth Cloutier, Peabody & Arnold LLP, Robert M. Buchanan, Jr., Michael R. Dube, Robert S. Frank, Jr., Choate, Hall & Stewart, Susan E. Cohen, Timothy M. Pomarole, Peabody & Arnold LLP, Joan A. Lukey, Matthew L. McGinnis, Ropes & Gray LLP, Bruce E. Falby, DLA Piper LLP, Boston, MA, for Defendants.

*MEMORANDUM AND ORDER ON THE SHELTON CLAIMANTS' MOTION FOR THE ENTRY OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, ETC. (# 107)*

COLLINGS, United States Magistrate Judge.

## I. Introduction

On December 12, 2013, plaintiffs Julie Shelton (hereinafter individually "Shelton"), Butler Rubin Saltarelli & Boyd, LLP and Faegre Baker Daniels LLP (hereinafter collectively "the Shelton Claimants") filed a motion (# 107) pursuant to Rule 65, Fed.R.Civ.P., seeking the entry of a temporary restraining order and a preliminary injunction freezing five million dollars ($5,000,000.00) in assets of Michael Weisman (hereinafter "Weisman"), Rebecca McIntyre (hereinafter "McIntyre"), and the defunct law firm Weisman & McIntyre, P.C. (hereinafter "W & M"). The motion was accompanied by a supporting memorandum of law (# 108), an affidavit of Shelton (# 109) and an affidavit of the Shelton Claimants' attorney with attached exhibits (# 110).

The following day, December 13, 2013, Weisman, McIntyre and W & M filed an opposition (# 113) to the motion, together with an affidavit of Weisman with attached exhibits (# 114) and an affidavit of McIntyre (# 115). With leave having been granted, on December 13th a reply memorandum (# 122) was filed. A surreply in opposition (# 129) was filed on December 20, 2013 after leave had once again been granted.

With the record complete, and a hearing having been held on December 23, 2013, the motion for temporary restraining order and preliminary injunction stands ready for decision. As stated at the hear-

ing, the motion shall be treated as one for a preliminary injunction.

## II. The Facts

To recap briefly the somewhat convoluted facts and claims involved of this case, Shelton served as Trustee of two trusts for the benefit of Elizabeth Tamposi (hereinafter "Tamposi"). Shelton and Tamposi engaged Weisman, McIntyre and W & M to represent them in litigation against the investment directors of the two trusts in the probate court in New Hampshire. The judge in the New Hampshire probate action ruled against Shelton and Tamposi. With respect to Shelton, the probate judge found her to have acted in bad faith and ordered that she personally pay an award of reasonable attorneys' fees to the investment directors and certain intervenors.[1] Further, the Successor Trustee to the trusts has filed a motion for surcharge in which he seeks to recoup approximately four million dollars ($4,000,000.00) from Shelton.

As a result of the outcome in the New Hampshire probate case, in the instant action Tamposi has sued Shelton for breach of fiduciary duty, legal malpractice and unjust enrichment.[2] (# 1) For their part, the Shelton Claimants have, *inter alia*, filed crossclaims against Weisman, McIntyre and W & M for legal malpractice (# 53, Crossclaims, Count II) and indemnification (# 53, Crossclaims, Count IV). The legal malpractice crossclaim arises out of the representation Weisman, McIntyre and W & M provided to Shelton in the New Hampshire probate case. With respect to the indemnification crossclaim, the Shelton Claimants allege that if Shelton is found liable to Tamposi on her claims for legal malpractice, breach of fiduciary duty or unjust enrichment, then by operation of law and/or as a result of their wrongful acts and/or consequent to an implied duty, Weisman, McIntyre and W & M must fully indemnify them for any damages.

Counsel for the Shelton Claimants avers that counsel for Weisman, McIntyre and W & M has informed the other parties in the instant action that Weisman, McIntyre and W & M have no malpractice insurance to cover any judgment, they have no substantial assets and they cannot respond to any judgment in this case. (# 110 ¶¶ 4, 7) However, it appears that Weisman, McIntyre and W & M have received, or soon shall receive, a substantial award of fees and costs in an unrelated state lawsuit. (# 110 ¶ 8) The Shelton Claimants have filed the Rule 65 motion seeking to freeze a portion of the anticipated fee award to Weisman, McIntyre and W & M in order to secure a fund from which to satisfy any judgment in this case.

## III. Discussion

The parties spar on a threshold issue: Does the Court have the authority to issue a preliminary injunction freezing assets in the circumstances of this case?

The Shelton Claimants argue that in a "mixed" case, as here, where both legal and equitable claims are advanced, the issuance of a freeze order is not foreclosed by the Supreme Court decision in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999). While agreeing generally with the Shelton Claimants' proposition[3], Weisman, McIntyre

---

1. Although the amount of legal fees to be paid has yet to be decided by the probate court, the investment directors and intervenors are requesting approximately four million dollars ($4,000,000.00).

2. There is a myriad of claims, counterclaims and crossclaims among the players in this litigation.

3. In their opposition, Weisman, McIntyre and W & M acknowledge that "[c]ertainly, federal

and W & M's position is more finely tuned. They contend that while *Grupo Mexicano* authorizes a court to issue a freeze order in a mixed case, any equitable relief in the form of a preliminary injunction must be in support of the equitable claims alleged. Because the Shelton Claimants are seeking a preliminary injunction in support of their legal malpractice claim [4], an action at law [5] pursuant to which they seek only an award of monetary damages, and not their indemnification [6] claim, Weisman, McIntyre and W & M assert that *Grupo Mexicano* mandates the denial of their motion.

The issue presented in *Grupo Mexicano* was "whether, in an action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." *Grupo Mexicano*, 527 U.S. at 310, 119 S.Ct. 1961. The Supreme Court ruled that "[b]ecause such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of · respondents' contract claim for money damages." *Grupo Mexicano*, 527 U.S. at 333, 119 S.Ct. 1961; *Iantosca v. Step Plan Services, Inc.*, 604 F.3d 24, 33 (1 Cir., 2010) (the Supreme Court held in *Grupo Mexicano* that "a preliminary injunction freezing a defendant's assets was beyond the conventional

courts have granted preliminary orders freezing assets where the plaintiff sought both legal and equitable relief." (# 113 at 4)

**4.** There is no dispute that the Shelton Claimants are seeking a preliminary injunction in order to freeze assets so as to preserve a fund from which to recover damages on their legal malpractice crossclaim. Their memorandum in support of their motion is clear: "As a result of the malpractice of Weisman, McIntyre and W & M, Ms. Shelton is exposed, among other things, to the fee order entered by the N.H. Probate Court" (# 108 at 5) and "Shelton is likely to prevail on her crossclaim for legal malpractice." (# 108 at 5–6) Further, in their reply memorandum, the Shelton Claimants argue that "[o]nce an action is of the type that sustains such injunctive relief, there is no requirement that the relief must arise from one count as opposed to another." (# 122 at 2) Moreover, when questioned at the oral argument, the Shelton Claimants' counsel specifically confirmed that the preliminary injunction was sought only in relation to their legal malpractice claim.

**5.** Weisman, McIntyre and W & M observe that "in New Hampshire, legal malpractice may be treated as a tort or a breach of contract. *See Wong v. Ekberg*, 148 N.H. 369, 375–76, 807 A.2d 1266 (2002)." *NeoDevices, Inc. v. NeoMed, Inc.*, 2009 WL 689881, at *7 (D.N.H., Mar. 12, 2009).

**6.** "[A] theory of equitable indemnification [is] a theory that allows one 'exposed to liability solely as the result of a wrongful act of another ... to recover from that party.' *Muldowney v. Weatherking Prods., Inc.*, 509 A.2d 441, 443 (R.I.1986); *see also Helgerson v. Mammoth Mart, Inc.*, 114 R.I. 438, 335 A.2d 339, 341 (1975) (allowing indemnification 'where one person is exposed to liability by the wrongful act of another in which he does not join')." *In re Spigel*, 260 F.3d 27, 34 (1 Cir., 2001); *see also Ayaz v. Livewire Mobile, Inc.*, 2013 WL 3291417, at *5 (D.Mass., June 27, 2013) (Indemnification described as "a right that arises in equity."). That being said, it is noted the indemnification crossclaim in the case at bar actually appears to be seeking only monetary damages, *i.e.*, if "the Shelton Claimants are found liable to ... Tamposi for damages on any of the counts asserted in the Complaint, the Shelton Claimants are entitled to full indemnity" and "[i]n the event the jury returns a verdict of damages against the Shelton Claimants, that the Court enter an Order requiring [Weisman, McIntyre and W & M] to pay the full amount of same.". (# 53, Crossclaims ¶ 109 and Prayer For Relief On Crossclaims B) "[N]o quintessential equitable relief is sought; and the *ad damnum* prayer of the complaint seeks only .specific monetary relief." *Matrix Partners VIII, LLP v. Natural Resource Recovery, Inc.*, 2009 WL 175132, at *5 (E.D.Tex., Jan. 23, 2009).

equity power of the federal courts when the movants were merely alleged general creditors who lacked a judgment lien on or equitable interest in those assets." [7]); *Ayaz v. Livewire Mobile, Inc.*, 2013 WL 3291417, at *5 (D.Mass., June 27, 2013) (Under *Grupo Mexicano*, "a district court does not have the authority to enter a preliminary injunction freezing assets pending the adjudication of an action brought solely at law."); *Fairview Mach. & Tool Co., Inc. v. Oakbrook Intern., Inc.*, 77 F.Supp.2d 199, 202 (D.Mass., 1999) ("*Grupo's* holding, however, is limited to cases where a creditor plaintiff has no lien or equitable interest in defendants (sic) assets."). No equitable claims were at issue in *Grupo Mexicano*. It was on that basis that a prior decision in *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940) was distinguished, the Supreme Court writing, "we concluded that the bill [in *Deckert*] stated a cause of action for the equitable remedies of rescission of the contracts and restitution of the consideration paid and that the preliminary injunction was a reasonable measure to preserve the status quo pending final determination of the questions raised by the bill." *Grupo Mexicano*, 527 U.S. at 308, 119 S.Ct. 1961 (internal citation and quotation marks omitted); *U.S. ex rel. Rahman v. Oncology Associates*, 198 F.3d 489, 496 (4 Cir., 1999) ("The Court in *Grupo Mexicano* distinguished *Deckert* by noting that the preliminary injunction in *Deckert* was a reasonable measure to preserve the *status quo* pending final determination of the questions raised by the suit in equity.").

The First Circuit has indicated that, if presented with the issue, "we would likely agree with decisions concluding that a court may, consistent with *Grupo Mexicano*, issue[ ] asset freezing injunctions in 'mixed' cases . . . where both equitable and legal remedies are sought." *Iantosca*, 604 F.3d at 33–34 (internal quotation marks and footnote omitted); *Revolutions Medical Corp. v. Medical Inv. Group LLC*, 2013 WL 1087693, at *6 (D.Mass., Mar. 13, 2013) ("federal courts have granted orders freezing assets where the plaintiff sought both legal and equitable relief"). The Shelton Claimants rely on the *Revolutions Medical* case in support of their argument. However, from all that appears, Judge Boal was not confronted with the issue now at hand. Rather, subsequent to invoking the general principle that freeze orders are available in mixed cases, Judge Boal determined that the plaintiff had "not presented enough evidence to support a likelihood of success on the merits" on any of the claims alleged and so recommended that the motion for preliminary injunction be denied.[8] Similarly, the facts in *Iantosca* case can be distinguished because the creditors had a judgment and a claimed lien interest which supported injunctive relief. *Iantosca*, 604 F.3d at 33.

The Shelton Claimants also rely on the *Charlesbank Equity* case wherein the First Circuit stated:

---

7. The Shelton Claimants do not claim to have a judgment lien on, or an equitable interest in, the monies that they seek to have frozen.

8. The District Judge to whom the *Revolutions Medical* case was assigned "agree[d] generally with the conclusions reached by the magistrate judge" in her report and recommendation on the motions for preliminary injunction and to provide a lien on assets. *Revolutions*

*Medical*, 2013 WL 1087693, at *1. However, since a final arbitration award entered in the plaintiff's favor after the report and recommendation had issued, the District Judge granted an injunction restraining the transfer or alienation of the property or assets of the two parties against whom the arbitrator had found liability. *Revolutions Medical*, 2013 WL 1087693, at *1.

In some situations, federal courts possess general equitable power to issue prejudgment injunctions in the nature of freeze orders so as to ensure the adequacy of postjudgment remedies. *See United States v. First Nat'l City Bank,* 379 U.S. 378, 385, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965); *De Beers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 220, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). The fact that such an order may be within the raw power of a federal court does not end the inquiry, but simply sets the stage for two further queries. The logically antecedent question involves whether, categorically speaking, a particular case is of a type in which such an order may be issued.

*Charlesbank Equity Fund II v. Blinds To Go, Inc.,* 370 F.3d 151, 158–159 (1 Cir., 2004).

The Court did not decide whether the case before it was one that fell within the *Grupo Mexicano* prohibition or whether it was distinguishable, "leav[ing] this question to another day." *Charlesbank Equity,* 370 F.3d at 159. Rather, the First Circuit assumed, *arguendo,* that the district court had the authority to issue an injunction, and agreed that the plaintiff had failed to show irreparable harm. *Charlesbank Equity,* 370 F.3d at 159, 163. The Shelton Claimants read too much into the phrase "categorically speaking" when they argue it means that preliminary injunctive relief is available on a legal claim in *any* case where both legal and equitable claims are alleged.

A hypothetical serves to make the point. Suppose a plaintiff brought two claims, one at law and the other equitable, against a defendant in a single case and that the joinder of the claims was proper under Rule 18(a), Fed.R.Civ.P. Suppose the two claims involved two entirely different acts or transactions which had no relation to each other. Under the Shelton Claimants' claimant's interpretation, injunctive relief would be proper on the legal claim because the case has an equitable claim in it, but it would defeat the whole purpose of the *Grupo Mexicano* holding if preliminary injunctive relief were available on the legal claim solely because of the presence of an unrelated equitable claim in the case.

Further, the cases cited by the First Circuit in footnote 10 in *Iantosca* do not aid the Shelton Claimants' cause. *Iantosca,* 604 F.3d at 34 and n. 10 [9]. For example, the District Count in Utah wrote:

> The court concludes that when a creditor asserts an equitable claim to a debtor's specific assets, and seeks a remedy to recover specific assets, the court may, in the interim, invoke equity to preserve the *status quo* pending judgment where the legal remedy might prove inadequate, and the preliminary relief would further the court's ability to grant the final relief requested. As a result, and as a means of preserving the *status quo* in this case, the court concludes that it is authorized to enjoin the dissemination, disposal and spending of the Tax Refunds because JPMorgan's Counterclaims seek various forms of equitable relief.

*Nilson v. JPMorgan Chase Bank, N.A.,* 690 F.Supp.2d 1231, 1262 (D.Utah, 2009) (internal citations omitted).

In granting an injunction, the Court specifically relied on the equitable claims alleged: "JPMorgan's and the Bank Group's equitable claims seeking the full recovery

---

**9.** The cases in footnote 10 are: *Nilson v. JPMorgan Chase Bank, N.A.,* 690 F.Supp.2d 1231, 1262–63 (D.Utah, 2009); *see also Animale Group Inc. v. Sunny's Perfume Inc.,* 256 Fed.Appx. 707, 709 (5 Cir., 2007); *Matrix Partners VIII, LLP v. Natural Res. Recovery Inc.,* 2009 WL 175132, at \*\*4–5 (E.D.Tex., Jan. 23, 2009).

of the Tax Refunds have a clear and close nexus to the assets they seek to enjoin in this preliminary injunction proceeding (*i.e.*, the Tax Refunds)." *Nilson,* 690 F.Supp.2d at 1263.

In the *Animale Group* case, claims for violation of the Lanham Act and state law torts were alleged. *Animale Group Inc. v. Sunny's Perfume Inc.,* 256 Fed.Appx. 707, 708 (5 Cir., 2007). The Court focused solely on the equitable relief sought when determining that "the district court was authorized to preserve the status quo by entering a limited asset freeze." *Animale Group,* 256 Fed.Appx. at 709. Both equitable claims and liens on the debtor's assets were claimed in *Matrix Partners VIII, LLP v. Natural Resource Recovery, Inc.,* 2009 WL 175132, at *5 (E.D.Tex., Jan. 23, 2009) ("Matrix asserts additional causes of action based on *equity,* i.e., *quantum meruit,* promissory estoppel and breach of fiduciary duty, and it also claims to have security interests in the assets in question." (emphasis in original)). In denying the request for injunctive relief, the *Matrix* Court concluded that the plaintiff failed to show a substantial likelihood of success or irreparable harm on any of its claims. *Matrix Partners,* 2009 WL 175132, at *7.

Other courts that have addressed the precise issue raised in the instant motion support the position advocated by Weisman, McIntyre and W & M, relating the equitable remedy of injunctive relief to the equitable claim alleged. The District Court in Oregon perhaps stated it most concisely:

> Accordingly, this court may only grant [defendant's] preliminary injunction if its equitable counterclaim—as opposed to its other counterclaims—satisfies the traditional test for a preliminary injunction. *See S.E.C. v. ETS Payphones, Inc.,* 408 F.3d 727, 734 (11th Cir.2005)

('the asset freeze is justified as a means of preserving funds for the equitable remedy'). If a preliminary injunction is not justified on the basis of [defendant's] unjust enrichment counterclaim, issuing the injunction would contravene the Supreme Court's clear ruling in *Grupo Mexicano* that courts lack authority to grant preliminary equitable assistance in the collection of legal debts. *See Matrix Partners VIII, LLP v. Natural Resource Recovery, Inc.,* 2009 WL 175132, at *4, (E.D.Tex.2009) (citing *Grupo Mexicano,* 527 U.S. at 325 [119 S.Ct. 1961]).

*Global Financial & Leasing Inc. v. Lojy Air Co.,* 2011 WL 1626051, **8–9 (D.Or., Apr. 28, 2011); *see also Klipsch Group, Inc. v. Big Box Store Ltd.,* 2012 WL 5265727, *7 (S.D.N.Y., Oct. 24, 2012) ("Plaintiff has not presented any authority to persuade the Court to freeze assets in which Plaintiff claims no equitable interest simply because Plaintiff has included equitable claims in its complaint."); *Westernbank Puerto Rico v. Kachkar,* 2008 WL 8089778, at *6 (D.P.R., July 23, 2008) ("Because Westernbank seeks cognizable relief in equity in the form of foreclosure on the Loan and Guarantee Agreements, and has shown that an asset freeze order is reasonable given the evidence of fraud here, and would aid in the ultimate relief of foreclosure which it seeks, it has adequately demonstrated that a motion to freeze assets is available in this case."), *report and recommendation adopted by Westernbank Puerto Rico v. Kachkar,* 2009 WL 2871160, at *7 (D.P.R., Sept. 1, 2009) ("Since plaintiff is seeking to freeze the assets that it also seeks to foreclose on, there is a nexus between their claim in equity and the co-defendants' assets that are the target of the freeze motion."); *Serio v. Black, Davis & Shue Agency, Inc.,* 2005 WL 3642217, at *9 (S.D.N.Y., Dec. 30, 2005) ("Even when a plaintiff asserts

multiple claims, some sounding in law and others in equity, the court may use its equitable powers to preserve assets *if done for the satisfaction of a potential judgment on the equitable claims.*" (emphasis added; citations and footnote omitted)); *F.T. Intern., Ltd. v. Mason,* 2000 WL 1514881, at *1 (E.D.Pa., Oct. 11, 2000) ("a plaintiff may obtain a prejudgment freeze on a defendant's assets only if he has asserted a cognizable equitable claim, has demonstrated a sufficient nexus between that claim and specific assets of the defendant which are the target of the injunctive relief, and has shown that the requested interim relief is a reasonable measure to preserve the status quo *in aid of the ultimate equitable relief claimed.*" (emphasis added; citations omitted)); *Fairview Mach. & Tool Co.,* 77 F.Supp.2d at 205 ("The plaintiff has an equitable interest in defendant's assets, since it seeks restitution for unjust enrichment. Thus, the plaintiffs claim for *quantum meruit seeks* cognizable relief in equity involving the specific assets of the defendant: *i.e.,* funds in the possession of the defendant to pay for the machinery it previously accepted. Moreover, the preliminary injunction freezing defendant's assets would be a reasonable measure to preserve the status quo *in aid of the ultimate equitable relief claimed.*" (emphasis added)).

In the instant case, because the Shelton Claimants are seeking a preliminary injunction based on their legal crossclaim and not on their equitable crossclaim, there is no "sufficient nexus between a cognizable claim in equity and the assets of the defendant that are the target of the preliminary injunction claim." *Fairview Mach. & Tool Co.,* 77 F.Supp.2d at 204 (citation omitted). Moreover, there has been no showing that an asset freeze would "be a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." *Fairview Mach.*

*& Tool Co.,* 77 F.Supp.2d at 204 (citation and internal quotation marks omitted).

### IV. Conclusion and Order

For all the reasons stated, the Court concludes that, under *Grupo Mexicano,* it is without authority to issue an injunction freezing the assets of Weisman, McIntyre and W & M in aid of the Shelton Claimants' crossclaim for legal malpractice. This is the case despite the presence of an equitable crossclaim since the asset freeze is not sought in aid of that claim. Therefore it is ORDERED that The Shelton Claimants' Motion For The Entry Of A Temporary Restraining Order And Preliminary Injunction Against Defendants Michael Weisman, Rebecca McIntyre, And W & M—To Order That $5 Million BePaid Into Escrow Upon Receipt (# 107) be, and the same hereby is, DENIED.